**In the Matter of READING COMPANY, Debtor.**

**Bankruptcy No. 71–828.**

United States District Court, E.D. Pennsylvania.

March 6, 1987.

See also, D.C., 65 B.R. 794.

Howard H. Lewis, Philadelphia, Pa., for plaintiff.

Alan Kleinburd, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

The United States petitioned for early redemption of its unsecured creditor note issued by the Reading Company pursuant to Reading's amended plan of reorganization ("plan"). The government is entitled to early redemption of its note only after Reading's obligations senior to the government's note are satisfied. The parties have now filed cross motions for summary judgment. The government asserts that the gross amount of valuation case proceeds, the fund from which Reading pays it reorganization creditors, exceeds the senior obligations while Reading contends that the proceeds, by reason of various deductions, do not exceed its senior obligations. In short, the parties disagree over what adjustments, if any, may be made in determining the amount earmarked to pay senior obligations.

Upon the completion of reorganization, Reading entered into a trust agreement for the benefit of its various classes of creditors. This agreement, which governs the present dispute, defines valuation case proceeds as:

> the cash, securities (other than Securities) and any other consideration received by the Company or the Debtor from Conrail, the United States, the USRA or any other Person or entity (whether pursuant to the Valuation Case or otherwise) by reason of the transfer pursuant to the RRR Act to Conrail or others of properties (or rights or options in respect of properties) owned, operated, leased to or otherwise controlled prior to such transfer by the Debtor or any Related Entity, together with all damages or compensation received by reason of unconstitutional erosion of their assets and for damages to properties (or rights or options in respect of properties) not transferred, resulting from the transfers referred to above, all less any taxes payable in re-

spect thereof. Valuation Case Proceeds include, without limiting the generality of the foregoing, (a) all amounts attributable to interest, dividends or other distributions on or otherwise attributable to any such cash, securities or other consideration and (b) Certificates of Value, Conrail Common Stock and Conrail Series B Preferred Stock, but do not include payments for interim or temporary use of property or temporary rights in or to property.

trust agreement, § 1.1.[1]

The parties agree on the following:

1. the amount received by Reading from the transfer of rail properties to the government;

2. the interest earned on proceeds held by the trustee;

3. the amount paid from the proceeds in satisfaction of reorganization debt;

4. the amount of outstanding senior obligations; and

5. Reading's reduction for voluntary redemption of C–1 bonds.[2]

The government's note is in the amount of $2,085,000. Using its calculations, the government claims that the proceeds exceed Reading's senior obligations by $8,758,000. Because Reading will succeed if the government's figure is reduced by $8,758,000, each contested adjustment to the proceeds must be considered separately.

■ Reading contends it may deduct the cash advances made by Reading to its lessors as part of settlements Reading made with them. By the terms of these agreements, the lessors were to repay Reading from the proceeds they received from the sale of their rail properties to Conrail. Reading also seeks to deduct interest on the cash advances. However, neither of these deductions are referred to in the trust agreement. The definition of proceeds includes consideration received from any person, "pursuant to the Valuation Case *or otherwise*", by reason of a transfer of rail properties. The money Reading received from its lessors was obviously by reason of a RRR Act transfer. The trust agreement does not permit Reading to exclude amounts owing from prior transactions, provide for repayment of any advances, or contain any limiting language. To permit Reading to withhold these funds from the proceeds would give Reading an unwarranted priority over its creditors. Therefore, the entire amount that Reading received from its lessors constitutes proceeds.

■ Reading also seeks to deduct $7,147,094 paid by the government to East Penn, a company controlled by Reading. In connection with this transfer, Reading received $6,609,464 which assertedly represents repayment of an inter-company loan, payment for the transfer of loss carry-forwards, and a dividend in liquidation. These deductions, however, are not authorized by the trust agreement for the same reason that Reading can not take a deduction for advances made to its lessors. Thus, Reading is entitled only to a deduction of $537,630, which is the amount East Penn did not pay to Reading. Similarly, Reading can not reduce the proceeds by the purchase price of its lessors' real estate.

■ Reading also claims a deduction of $9,365,000 for the costs (plus interest) of administering the valuation case. In support of its position, Reading points to its reorganization plan which states that the indentures will provide for valuation case proceeds and asset disposition proceeds[3] to "be applied, after payment of the expenses of operation and maintenance" to Read-

1. ·The definition of proceeds in the plan of reorganization differs in some respects from the trust agreement definition; however, as Reading notes, the trust agreement construction controls. *See* Order 2004.

2. · With respect to the voluntary redemption, the parties differ over the amount actually redeemed by approximately $300,000.

3. The asset disposition proceeds are those proceeds obtained by the sale of non-rail assets—as contrasted with valuation case proceeds which came from the sale of rail assets to Conrail.

ing's obligations. Plan, § 4.5. However, this deduction for costs was not included in the plan or trust agreement definition of the valuation case proceeds. Moreover, the plan definition of asset disposition proceeds provides for those proceeds to be valued net of costs and expenses "whether related to the Asset Disposition Program, the Prosecution of the Valuation Case, or otherwise." The plan clearly envisioned payment of Reading's costs and expenses from the asset disposition program; therefore, the costs of administering the valuation case are not deductible from the valuation case proceeds.

■ Reading deducted a $1,770,000 sinking fund payment for C–1 Bonds from the proceeds. The C–1 bond agreement provides for sinking fund payments to be made from asset disposition proceeds; however, no asset disposition proceeds were available when this payment was made by Reading. The C–1 agreement provides that when sinking fund obligations exceed the available funds, the unpaid balance is carried forward and added to the next sinking fund payment. The C–1 agreement does not authorize the payment of sinking fund obligations from valuation case proceeds.

Reading's remaining claims concern taxes paid, escrowed, or reserved by Reading. In this regard, the applicable language in the trust agreement is "less taxes payable with respect thereof." Reading's principal deduction in this area is for taxes that ordinarily would have been due on the income portion of the valuation case proceeds. No taxes were actually paid, however, because Reading incurred large operating losses so that it did not have to pay any income tax for the years in question.

On the one hand, the government interprets the "less taxes payable with respect thereof" provision as only permitting a deduction for taxes Reading paid or will actually pay in the future. On the other hand, Reading interprets this language to include a declared tax liability whether or not taxes are actually paid.

■ The interpretation of an ambiguous term or phrase is a question for the fact-finder who must interpret the language in accord with the intent of the parties. *Mellon Bank, N.A. v. Aetna Business Credit,* 619 F.2d 1001 (3d Cir. 1980). Contractual language is ambiguous where it is subject to more than one reasonable interpretation. The interpretation given to the phrase "less taxes payable with respect thereof" by both parties is reasonable; therefore, the parties will be given an opportunity to present objective evidence bearing on their intent and supporting their interpretation of this phrase.

■ The final issue raised is the government's contention that the available proceeds to pay senior obligations include interest on money improperly withheld from the trustee. Proceeds expressly cover "all amounts attributable to interest ... on or otherwise attributable to any such cash, securities or other consideration ..." Clearly, proceeds include interest attributable to proceeds whether held by Reading or its trustee. It follows that interest on proceeds retained by Reading comes within the definition of proceeds.

Because the parties dispute over treatment of taxes is not yet ripe, I can not determine whether proceeds exceed Reading's senior obligations. Accordingly, judgment on the government's petition is reserved until after the evidentiary hearing.

## ORDER

AND NOW, this 6th day of March, 1987, upon consideration of the cross motions for summary judgment on the United States petition for redemption of is unsecured creditor note, it is hereby ordered as follows:

1. Reading's claimed deductions from case valuation proceeds are rejected to the extent set forth in the accompanying memorandum.

2. On April 10, 1987, at 9:30 a.m., an evidentiary hearing, as set forth in the accompanying memorandum, will be held in Courtroom 6A. All direct testimony shall be by affidavit filed in chambers with the affiant available for cross-examination.

3. The government's claim for inclusion of interest on amounts withheld by Reading from the proceeds is accepted. Reading shall have thirty days from the date of this order to respond to the government's method of calculating interest.